ANNIE STEVENS WOODRUFF, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

STEVENS WOODRUFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

JOHN OWEN III, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket Nos. 79784, 79785, 79786.   Promulgated October 6, 1938.

*John M. Hudson, Esq.*, for the petitioners.
*W. H. Payne, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: These proceedings were brought to redetermine
deficiencies for the year 1932, found by the respondent, as follows:

| | |
|---|---|
| Annie Stevens Woodruff | $1, 260. 95 |
| Stevens Woodruff | 792. 07 |
| John Owen III | 382. 19 |

The sole question at issue is whether or not the petitioners sustained
deductible losses in 1932 upon the dissolution of a limited partnership
in which they had been special partners.

Under an ancillary issue, the right of the petitioner Annie Stevens
Woodruff to a one-half interest in the share of her son, Stevens Wood-
ruff, in the partnerships was conceded by the respondent.

The facts were stipulated substantially as follows:

The petitioners are individuals and reside in Detroit and Grosse
Pointe, Michigan.

Under articles of agreement entered into as of June 15, 1929,
there was organized under sections 9885 et seq. of the Compiled Laws
of Michigan, 1929, a limited partnership under the name and style
of "Crouse and Company," hereinafter called the Old Co., with
Charles B. Crouse and Harry W. Kerr as general partners and
Stevens Woodruff and John Owen III as special partners.   The
partnership was organized for the purpose of conducting and carry-
ing on a general stock and bond brokerage and underwriting business.

In accordance with the terms of the agreement, petitioners Stevens
Woodruff and John Owen III, as special partners, contributed
$50,000 each, in cash, to the partnership capital.   The special partners
were entitled to interest upon their respective contributions at the
rate of 6 percent per annum and, in addition, 5 percent of the annual
net earnings of the partnership after the payment of all expenses.

Upon the termination of the partnership, the special partners were entitled, after the payment of all debts, to the return of their respective capital contributions before any distribution should be made to the general partners and, in the event the capital of the partnership at the date of termination should be less than the aggregate contribution of the special partners, they were entitled to their respective portions of the aggregate capital. The management and control of the business was in the hands of the general partners, and the petitioners, Stevens Woodruff and John Owen III, as special partners, had no voice and did not participate in the control and management of the affairs of the partnership. The Old Co. was to continue until June 15, 1934.

By an act of the Legislature of the State of Michigan, approved May 18, 1931, being Act No. 110 of the Public Acts of Michigan for 1931 and known as the Uniform Limited Partnership Act, to authorize the Formation of Limited Partnerships and for other purposes, chapter 33 of R. S. 1846 was repealed except as to certain existing partnerships, and the provisions for the organization of limited partnerships were reenacted.

All partners, general and special, desired to take in Philip K. Watson as a general partner. They did not consider the move feasible under the provisions of the old statute governing limited partnerships. Through losses the capital of the Old Co. was reduced below the aggregate contribution of the special partners. All partners of the Old Co. and also Philip K. Watson desired to take advantage of the provisions of the new statute. To accomplish that purpose and to permit the business and affairs of the Old Co. to be carried on without interruption and without unfavorable publicity, the "technical dissolution" of the Old Co. was effected.

In January 1932 the assets of the Old Co., shown in the following table, exclusive of good will, had a gross value of $18,939.31 and a net value of $17,073.06 (petitioners' counsel at the hearing limited the amount of loss claimed to $80,000) :

| | |
|---|---:|
| Cash on hand | $1,137.53 |
| Accounts receivable | 1,914.38 |
| Stocks at market | 2,900.00 |
| The beneficial interest in two memberships upon Detroit Stock Exchange | 7,000.00 |
| Furniture and fixtures | 2,150.00 |
| Prepaid Fidelity insurance | 958.28 |
| Prepaid life insurance | 493.11 |
| Commissions receivable | 650.00 |
| Stamps | 51.01 |
| Cash surrender value of life insurance | 1,685.00 |
| | 18,939.31 |

*Less liabilities:*

| | | |
|---|---:|---:|
| Insurance note | $986.25 | |
| Fidelity insurance account | 600.00 | |
| Accrued rent | 150.00 | |
| Accrued Stock·Exchange expense | 130.00 | |
| | | 1,866.25 |

Net assets _____17,073.06

By agreement dated January 26, 1932, but effective as of January 15, 1932, the Old Co., by mutual agreement of all the partners, was dissolved and the affairs of the Old Co. were taken over by the New Co., hereinafter described, organized simultaneously with the dissolution of the Old Co., and notice of dissolution was duly given and published.

By articles of agreement entered into as of January 15, 1932, a new partnership was organized in accordance with the new Uniform Limited Partnership Act under the name of "Crouse & Company," hereinafter called the New Co., with Charles B. Crouse, Harry W. Kerr, and Philip K. Watson as general partners and Stevens Woodruff and John Owen III as limited partners.

In the agreement dissolving the Old Co. it was recited that the New Co. was to be organized with Stevens Woodruff and John Owen III as limited partners and that the New Co. was willing to accept as the capital contributions of the limited partners thereto all of the assets of the Old Co. to which the special partners, upon the termination of the Old Co., were entitled. It was further recited that all the parties desired to avoid the necessity of transferring the assets of the Old Co. to the special partners and thereafter having the special partners retransfer them to the New Co. It was thereupon agreed that the Old Co. was dissolved and all the net assets of the Old Co., exclusive of good will, were the property, share and share alike, of the special partners, Stevens Woodruff and John Owen III. The special partners, by the terms of the agreement, directed the Old Co. to convey and transfer all of its net assets, exclusive of good will, to the New Co. to represent the special partners' contributions as limited partners of the New Co. to the partnership capital of that company. In accordance with that agreement the Old Co. transferred and conveyed all its net assets, exclusive of good will, to the New Co.

Under the articles of agreement, dated as of January 15, 1932, creating the New Co., it was recited that "all of the net assets are as a matter of law the property of the special partners of the Old Company" and that the Old Co. was transferring all such assets to the New Co. "as the nominee of the special partners of the Old Company * * *." It was provided that the capital contributions of

the limited partners, Stevens Woodruff and John Owen III, in cash and other assets, were shown in the schedule annexed to the agreement and that for the purposes of the agreement the limited partners should be regarded as having contributed to the capital of the partnership the sum of $10,000 each. The agreement and schedule "B" annexed thereto also provide that the capital contributions of the general partners to the new partnership should be as follows:

| | |
|---|---:|
| Charles B. Crouse, | $15,000 |
|     Representing good will in the firm of Crouse & Company, a Limited Partnership, organized as of June 15, 1929; | |
| Harry W. Kerr, | 5,000 |
|     Representing good will in the firm of Crouse & Company, a Limited Partnership, organized as of June 15, 1929; | |
| Philip K. Watson, | |
|     In cash | 10,000 |
| | 30,000 |

Under the new agreement, the limited partners were entitled to interest at the rate of 6 percent on their respective capital contributions as agreed upon. In addition it was provided that the net profits, as therein defined, should be distributed to the limited partners as follows: 8 percent of the first $10,000 net profits, 12 percent of the second $10,000 net profits, and 16 percent of the balance of such net profits. All the remaining net profits were distributable to the general partners. The limited partners were prohibited from participating in the control or management of the partnership business and were not liable for any loss suffered by the partnership beyond their respective contributions, nor were they personally responsible for the debts or losses of the company.

Under the terms of the agreement, dated as of January 15, 1932, the new partnership was to continue to January 15, 1937. On or prior to that date, by mutual agreement of all the partners, general and limited, the partnership was continued under the existing articles of agreement for a period of six months, or until July 15, 1937.

In the notices of deficiency sent to the petitioners Stevens Woodruff and John Owen III appears the following statement:

Upon the dissolution of the old partnership on January 15, 1932, you received one-half of the assets based upon an appraisal and revaluation of the assets. On the same date, the new partnership was organized and the assets received from the old company were turned over to the new company for an interest in that business.

The petitioners contend, in the first instance, that they liquidated their interests in the Old Co. which cost them $100,000, for assets having a net value of $17,073.06 and that the difference between these figures represents their loss sustained by reason of the transaction.

In the alternative, they argue that if such liquidation should be held not to result in a deductible loss, then upon the transfer of those assets to the New Co. for $20,000 they sustained a loss measured by the difference between the cost of the assets to them, or $100,000, and $20,000, the capital value of their limited partnership interests in the New Co.

The respondent's position is that the petitioners sustained no deductible loss whatever, either through the liquidation of the Old Co. or upon the transfer of the physical assets of the Old Co. to the New Co. He urges that there was a "distribution in kind" of the assets, thereby bringing the cases within the prohibition found in article 604 of Regulations 77.[1] He also asserts that the assets were not in reality received and transferred by the petitioners to the New Co. and argues that recitals to that effect were merely a "recognition" of their contractual rights. This contention, it will be noted, is squarely at variance with his finding in the notices of deficiency wherein he held that they "received" the assets. Respondent does not question that the petitioners entered into the transaction for profit nor is any question raised as to the value of the assets.

In approaching the questions here involved and the possible application of respondent's argument thereto, it is advisable to bear in mind that we are here dealing with special or limited partners. They made aggregate cash contributions of $100,000 to the old partnership. By the terms of their contract they were limited to 6 percent returns on their investment and a 5 percent share in net profits. Upon dissolution they were limited to a return of their investment and, if the assets were less than this amount, then to their respective portions of the aggregate capital on hand (excluding good will). On dissolution they received assets of an aggregate value of $17,073.06. These assets were, by agreement and solely for convenience, transferred directly by the old partnership to the new partnership as the nominee of the special partners. By contract it was agreed that such assets should be accepted by the new partnership as the contributions

---

[1] ART. 604. *Readjustment of partnership interests.*—When a partner retires from a partnership, or it is dissolved, he realizes a gain or loss measured by the difference between the price received for his interest and the cost to him of his interest in the partnership, including in such cost the amount of his share in any undistributed partnership net income earned since he became a partner on which the income tax has been paid. However, if such interest in the partnership was acquired prior to March 1, 1913, both the cost as hereinbefore provided and the value of such interest as of such date, plus the amount of his share in any undistributed partnership net income earned since February 28, 1913, on which the income tax has been paid, shall be ascertained, and the gain derived or the loss sustained shall be computed as provided in article 561. If the partnership distributes its assets in kind and not in cash, the partner realizes no gain or loss until he disposes of the property received in liquidation. Whenever a new partner is admitted to a partnership, or any existing partnership is reorganized, the facts as to such change or reorganization should be fully set forth in the next return of income, in order that the Commissioner may determine whether any gain or loss has been realized by any partner.

744

of the special partners at a value of $20,000. The rights of the special partners in the new partnership were limited to 6 percent on their investment, plus fixed percentages of the new profits, if any.

Respondent based the notices of deficiency on the conclusion and alternatively contends that no loss is recognizable because of the prohibition contained in section 112 (b) (1) of the Revenue Act of 1932.[2] He states that "the exchange by Woodruff and Owen of their limited partnership interests in the Old Co. for limited partnership interests in the New Co. constituted an exchange of property" within the purview of that section. He predicates his argument on the assumption that there was a complete continuity and identity of assets and their ownership throughout the entire series of transactions.

We find the facts to be to the contrary. Subsection (b) is entitled "Exchanges solely in kind." The petitioners acquired the ownership of certain specific assets through the dissolution of the Old Co. They then proceeded to exchange those assets for undivided interests in the New Co.—an entirely different kind of property. The "interest" of the petitioners in the Old Co. had been extinguished by its dissolution through the operation of the contract and therefore no longer existed as a comparable to an analogous interest which they may have acquired in the New Co.

The assets were owned outright by the petitioners, who were not engaged as individuals in the same business as Crouse & Co. Their contribution of those assets to the New Co. was in the same category as the payment of any money or other property valuable to its business.

The respondent stresses the fact that the assets of the Old Co. were transferred by that company directly to the New Co. and deduces therefrom that the assets never were received by the petitioners and, hence, not owned by them and exchanged by them for limited partnership interests in the New Co.

As above noted, this contention is contrary to his finding on which the notices of deficiency are based. The statement attached to the notices of deficiency recites that petitioners received the assets. Furthermore, the recitals in the agreement of January 15, 1932, were not only declarative of the rights of the petitioners to the physical

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(a) GENERAL RULE.—Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

(b) EXCHANGES SOLELY IN KIND.—

(1) PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

assets of the Old Co.—they admitted the petitioners' present ownership of such assets upon the dissolution of the Old Co. and recognized the proposed procedure of having them transferred directly to the new owners. By special direction of the petitioners, and for legitimate business reasons, the New Co. was substituted for themselves as transferee of the assets. To show the absolute ownership and right of possession of the petitioners, nothing further is needed than paragraph 2 of the covenants of the agreement of January 15, 1932, in which all the parties agreed that "all of the net assets of the Old Company, exclusive of good will, are the property, share and share alike, of the Special Partners."

It is a legal principle, too familiar to require citation, that property may be transferred to a nominee of the contractual recipient in the process of fulfilling the terms of the contract. That procedure was adopted in these cases.

Respondent also contends that there was a distribution in kind of the assets of the old partnership and consequently the loss can not be allowed under article 604 of Regulations 77. Assuming respondent's premise that there was a distribution in kind, we do not agree that the deduction of the loss suffered by the special partners is barred by the regulations. It is to be noted that the general tenor of the regulation is to recognize gains and losses on the dissolution of partnerships. It is the exceptional case rather than the rule where there will not be such recognition. If a real loss is sustained the regulation contemplates recognition. On the question of fact as to loss there can be no doubt. Petitioners had sustained actual losses. Moreover, article 604 deals with partnerships generally and does not purport to define the rights of special or limited partners. The interests of the petitioners were not those of general partners. They were in the nature of fixed or limited investments. They had no general participation in profits and losses. Their rights on dissolution were similarly limited by contract to the amount of their contribution. These rights are very different from the rights of general partners. We do not believe the present cases come within the prohibitive provision of the regulation. Rather, it fits the general concept that realized losses are deductible.

In *Helvering* v. *Walbridge*, 70 Fed. (2d) 683, the validity of this provision of article 604 was questioned, the court speaking through Learned Hand, J., characterizing the provision that no gain was realized until the property distributed was sold as "a provision of doubtful validity except perhaps in cases where the dividend did not itself have any 'fair market value'." We have no hesitation in saying that, were article 604 to be so construed as to bar the losses here claimed, the unreasonableness of the regulation and its consequent invalidity would be amply demonstrated. The losses are real. The

amount is fixed. If the loss be denied at this time, it would seem beyond dispute that petitioners will never get the benefit of its deduction. By their contract the special partners have fixed the value of their contribution to the new partnership at $10,000 each. In the event of dissolution of that concern, by their contract their recovery would be limited to that amount and the fixed amount of the contribution would be the limit of any loss. That the respondent would permit them at that date to deduct the losses now in question is beyond the scope of imagination.

Petitioners at the hearing limited the amount claimed as losses to an aggregate of $80,000. The deduction by the petitioners of appropriate shares of this sum is approved.

Reviewed by the Board.

*Decisions will be entered under Rule 50.*

TURNER and DISNEY concur only in the result.